**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

*Southern Division*

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **JOSEPH JOHNSON, JR.** | | | | | | * | | | | | |
| **Plaintiff,** | | | | | | * | | | | | |
| **v.** | | | | | | | | **Case No.: GJH-15-1820** | | | |
| | | | | | | * | | | | | |
| **ARNE DUNCAN,** *et al.,* | | | | | | | | | | | |
| | | | | | | * | | | | | |
| **Defendants.** | | | | | | | | | | | |
| | | | | | | * | | | | | |
| * | * | * | * | * | * | * | * | * | * | * | * |

**MEMORANDUM OPINION**

Plaintiff Joseph Johnson, Jr. brings this action against Arne Duncan, Secretary of the

United States Department of Education, and the Department of Education ("the Department")

(collectively, "Defendants") for breach of conditional settlement, promissory estoppel, unjust

enrichment, and violations of the Consumer Credit Reporting Reform Act of 1996 ("CCRRA"),

the Debt Collection Improvement Act of 1996, and the Higher Education Act of 1965. Presently

pending before the Court is Plaintiff's Motion for Partial Summary Judgment, ECF No. 27, and

Defendants' Motion for Judgment on the Pleadings, ECF No. 38. No hearing is necessary. *See*

Loc. R. 105.6. For the following reasons, Plaintiff's Motion for Partial Summary Judgment is

denied, and Defendants' Motion for Judgment on the Pleadings is granted, in part, and denied, in

part.

## I.     BACKGROUND

This case marks Joseph Johnson, Jr.'s eleventh action[1] in a long-standing effort to avoid

paying back student loans he took out from 1993 to 1996. *See* ECF No. 10 ¶ 9; *Johnson v. U.S.*

*Dep't of Educ.*, 580 F. Supp. 2d 154, 155 (D.D.C. 2008), *aff'd without op.*, No. 08-5468 (D.C.

Cir. Apr. 10, 2009) ("*Johnson I*").[2] These litigations stem from federally-guaranteed student

loans Mr. Johnson took out to attend classes at the University of Maryland University College

("UMUC") from 1993 to 1996. *Johnson I*, 580 F. Supp. 2d at 155. In April 2004, Johnson

consolidated his student loans into a single federal Direct Loan ("the Loan"). ECF No. 1 ¶ 6.

Throughout 2011, disputes — and several lawsuits — arose between Plaintiff and various

entities, including the Department of Education, the Direct Loan Servicing Center, Sallie Mae,

and Xerox Education Solutions (a.k.a. Affiliated Computer Services, Inc. or ACS Education

Solutions), regarding the amount, payment, and administration of his Loan. *See* ECF No. 10 at

2–3; ECF No. 27-1 at 4–9; *Johnson VII*, 105 Fed. Cl. At 89–90.[3] By January 2012, the balance

purportedly owed on the Loan was $35,556.58. ECF No. 10 ¶ 10.

---

[1] *Johnson v. U.S. Dep't of Educ.*, 580 F. Supp. 2d 154, 155 (D.D.C. 2008), *aff'd without op.*, No. 08-5468 (D.C. Cir. Apr. 10, 2009) ("*Johnson I*"); *Johnson v. Duncan*, 746 F. Supp. 2d 163 (D.D.C. 2010) ("*Johnson II*"); *Johnson v. Affiliated Computer Servs., Inc.*, No. 310-CV-2333-B, 2011 WL 4011429 (N.D. Tex. Sept. 9, 2011), *aff'd*, 500 F. App'x 265 (5th Cir. 2012) ("*Johnson III*"); *Johnson v. Xerox Educ. Sols LLC a.k.a. ACS*, No. 050200145112012 (D. Ct. Prince George's Cty.), No. CAL12-26946 (Cir. Ct. Prince George's Cty. 2012) ("*Johnson IV*"); *Johnson v. Sallie Mae, Inc.* (Cir. Ct. Prince George's Cty. 2011) ("*Johnson V*"); *Johnson v. Sallie Mae, Inc.*, No. 050200443282010 (Cir. Ct. Prince George's Cty. 2011) ("*Johnson VI*"); *Johnson v. United States*, 105 Fed. Cl. 85 (Ct. Fed. Cl. 2012) ("*Johnson VII*"); *Johnson v. Xerox Educ. Sols. LLC*, No. 050200025722014 (D. Ct. Prince George's Cty. 2014), No. CAL14-05640 (Cir. Ct. Prince George's Cty. 2014) ("*Johnson VIII*"); GJH-14-1542 (D. Md. 2014) ("*Johnson VIII*"); *Johnson v. Premier Credit of N. Am. LLC*, No. 050200077212014 (D. Ct. Prince George's Cty. 2014) No. CAL14-17920 (Cir. Ct. Prince George's Cty. 2014) ("*Johnson IX*" or the "*Xerox* case"); *Johnson v. Experian Info. Sols.*, PWG–15–558, 2015 WL 7769502 (D. Md. Nov. 17, 2015) ("*Johnson X*"). Other judicial opinions note that additional actions exist, such as *Johnson v. Central Collection Unit, Dep't of Budget and Mgmt.*, DBAM–CCU–01–06–47614 (Md. Office of Admin. Hr'gs, Apr. 9, 2007). *See Johnson VII*, 105 Fed. Cl. at 90.

[2] To minimize confusion, the Court will utilize the same abbreviated names that Judge Grimm used in *Johnson v. Experian Info. Sols.*, PWG–15–558, 2015 WL 7769502 (D. Md. Nov. 17, 2015) ("*Johnson X*").

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

In an effort to "settle" the debt, Plaintiff sent the Department of Education a check for $12,390.00 and a "detailed settlement transmittal letter" on February 14, 2012 ("the Purported Settlement"). ECF No. 10 ¶ 12. Plaintiff claims that he tendered the check "as a final payment in full, accord and satisfaction of any claims, demands and monies owed or alleged to be owed by Plaintiff on the disputed debt," and that the settlement check stated "[b]y negotiating this instrument, the payee acknowledges and agrees to be bound by the terms and conditions contained in the accompanying correspondence dated February 14, 2012." *Id.* ¶ 13. The Department subsequently cashed the check for $12,390.00 and applied it to Plaintiff's outstanding loan balance. *See id.* ¶¶ 17, 22. Plaintiff's pending claims now stem from his assertion that because Defendants cashed the check, they agreed to declare Plaintiff's entire debt paid and satisfied. *See id.* ¶ 23. Plaintiff claims that Defendants "falsely reported to credit bureaus that Plaintiff was delinquent on the disputed debt." *Id.* ¶ 24. Plaintiff also alleges that "Defendants doubled the balance on the disputed debt by increasing it from $23,251.51 to about $49,483.58 and then sent it to third-party collection agencies." *Id.* ¶ 25. Plaintiff states that these actions have caused him "consequential, economic, and pecuniary damages." ECF No. 10 at 8–14.

In his Amended Complaint, Plaintiff asserts claims of breach of conditional settlement (Count I), promissory estoppel and detrimental reliance (Count II), unjust enrichment (Count III), "accounting" (Count IV), violation of the CCRRA (Count V), and statutory violations of "Title 31 U.S.C. § 3711, 4 C.F.R. Part 103, 31 C.F.R. Part 902, 903" of the Debt Collection Improvement Act of 1996 and "sections 432(a) and 468" of the Higher Education Act of 1965 (Count VI). ECF No. 10 at 7–14. Plaintiff submitted a Motion for Partial Summary Judgment on March 31, 2016 on his breach of contract claims (Count I) and violations of the Fair Credit

3

Reporting Act (Count V).[4] ECF No. 27. On June 23, 2016, Defendants filed a Motion for

Judgment on the Pleadings. ECF No. 38. Plaintiff submitted his Response and Opposition on

August 8, 2016, ECF No. 44. Defendant submitted a Reply on August 23, 2016. ECF No. 46.

## II.     STANDARD OF REVIEW

### A.  Motion for Judgment on the Pleadings

A motion for judgment on the pleadings pursuant to Rule 12(c) is governed by the same

standard of review as a motion to dismiss under Rule 12(b)(6). Therefore, a motion for judgment

on the pleadings should be granted "if, after accepting all well-pleaded allegations in the

plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the

plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his

claim entitling him to relief." *Drager v. PLIVA USA, Inc.,* 741 F.3d 470, 474 (4th Cir. 2014)

(quoting *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir. 1999)). A motion under Rule

12(c) tests the adequacy of the complaint and "does not resolve the merits of the plaintiff's

claims or any disputes of fact." *Id.* (citations omitted). To overcome such a motion, a complaint

must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678

(2009). A claim is plausible when "the plaintiff pleads factual content that allows the Court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating the sufficiency of Plaintiff's claims, the Court accepts factual allegations in

the Complaint as true and construes the factual allegations in the light most favorable to the

Plaintiff. *See Lambeth v. Bd of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005)

---

[4] While Plaintiff originally pleaded his claims in Count V pursuant to the "Consumer Credit Reporting Reform Act
of 1996," ECF No. 10 at 11, he has clarified in later briefings that Count V is asserted under the Fair Credit
Reporting Act, 15 U.S.C. § 1681 *et seq.*, which the CCRRA amended. ECF No. 27-1 at 25; *see also Ross v.
F.D.I.C.*, 625 F.3d 808, 813 (4th Cir. 2010).

(citing *Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Scheuer v. Rhodes*, 416 U.S. 232 (1974)).

However, a court need not accept a plaintiff's legal conclusions as true, as "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Complaint must contain more than "legal

conclusions, elements of a cause of action, and bare assertions devoid of further factual

enhancement." *Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir.

2009).

### B. Summary Judgment

A party may also move for summary judgment under Fed. R. Civ. P. 56(a), identifying

each claim or defense on which summary judgment is sought. Fed. R. Civ. P. 56(a). A court

"shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A

material fact is one that "might affect the outcome of the suit under the governing law."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine issue over a material fact

exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Id.* In undertaking this inquiry, the Court must consider the facts and all reasonable

inferences in the light most favorable to the nonmoving party. *Scott v. Harris,* 550 U.S. 372, 378

(2007). However, this Court must also abide by its affirmative obligation to prevent factually

unsupported claims and defenses from going to trial. *Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th

Cir. 1993).

## III.   ANALYSIS

### A. Collateral Estoppel

The Court adheres to "the related doctrines of res judicata and collateral estoppel." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Under res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Id.* (citing *Cromwell v. County of Sac*, 94 U.S. 351, 352 (1876)). With respect to collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Id.* (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)). As this Court and other courts have recognized, "res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Id.*

The party asserting collateral estoppel bears the burden of "establish[ing] its predicates, and this of course includes presenting an adequate record for the purpose." *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982). When considering "a motion to dismiss on the ground of res judicata [or collateral estoppel], a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact." *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000); *Brooks v. Arthur*, 626 F.3d 194, 199 n.6 (4th Cir. 2010). Federal courts must afford "preclusive effect to state–court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen*, 449 U.S. at 96 (1980). Finally, a party seeking to rely on the doctrine of collateral estoppel must establish five elements:

> (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the

6

> prior proceeding; (3) determination of the issue must have been a
> critical and necessary part of the decision in the prior proceeding;
> (4) the prior judgment must be final and valid; and (5) the party
> against whom estoppel is asserted must have had a full and fair
> opportunity to litigate the issue in the previous forum.

*Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998).

Here, Defendants allege that the decisions in *Johnson IX* (a.k.a. the "*Xerox* case") and

*Johnson X* preclude Johnson from relitigating whether the Purported Settlement satisfied his

student loan obligations. ECF No. 38-1 at 11. In *Johnson IX*, Plaintiff brought claims in the

District Court for Prince George's County against Xerox Education Solutions, LLC, and related

entities for (i) defamation, (ii) libel, (iii) violation of the Maryland Fair Credit Reporting Act, (iv)

breach of statutory duty, (v) unjust enrichment, (vi) tortious interference with contract, (vii)

breach of agreement, (viii) intentional infliction of emotional distress, and (xii) Maryland

Consumer Debt Collection Act. ECF No. 44-3 at 11–45; *Johnson v. Premier Credit of N. Am.*

*LLC*, No. 050200077212014 (D. Ct. Prince George's Cty. 2014); *see also Johnson X*, 2015 WL

7769502, at *4. Johnson also asserted claims against Premiere Credit of North America for (ix)

defamation/libel/slander, (x) libel, (xi) violation of the Maryland Fair Credit Reporting Act, (xiii)

failure to use due diligence, and (xiv) intentional infliction of emotional distress. *Id.* The case

was removed to the Circuit Court for Prince George's County. *Johnson v. Premiere Credit of N.*

*Am., LLC*, No. CAL14–17920. "Premiere Credit moved for summary judgment, and on

November 26, 2014, a stipulation of dismissal with prejudice was entered with respect to

Premiere Credit." *Johnson X*, 2015 WL 7769502, at *4; *see also Johnson IX,* No. CAL14–17920.

The remaining Xerox defendants moved for summary judgment, and Johnson opposed, also

moving for partial summary judgment on his contract claim. *Id.*; *see also* ECF No. 44-4. On

April 13, 2015, the Circuit Court for Prince George's County, without a written opinion, granted

the defendants' motion for summary judgment as to all of Johnson's claims, ECF No. 44-5, and

denied Johnson's motion for partial summary judgment, ECF No. 44-6.[5]

In *Johnson X*, Judge Grimm of the District of Maryland analyzed in detail whether the

Circuit Court's decision in *Johnson IX* collaterally estopped Johnson from relitigating the effect

of the Purported Settlement on his outstanding debt. *Johnson v. Experian Info. Sols.*, PWG–15–

558, 2015 WL 7769502 (D. Md. Nov. 17, 2015). The answer was a resounding "yes."

Specifically, *Johnson X* held that "the issue of whether Johnson settled his student loan[] debts as

they relate to Johnson's current claims against Experian is identical to the issue previously

decided in *Johnson IX* of whether Johnson settled his student loan debts as they relate to Xerox

Education Solution." *Johnson X*, 2015 WL 7769502, at *6. The Court further held, "Johnson

cannot relitigate in this Court the bona fides of his purported settlement letter, which have been

rejected in *Johnson IX*." *Id.* at *7. The Court dismissed Johnson's argument that the lack of a

written opinion obviated *Johnson IX*'s preclusive effect, noting that "[e]ven though the circuit

court in *Johnson IX* did not issue a written opinion explaining its order, it is clear that the circuit

court rejected Johnson's claim that he had a settlement agreement that discharged his student

loan obligations." *Id.* Finally, the Court found that deciding the bona fides of Johnson's

settlement agreement "was critical and necessary" in the prior proceeding, that "the judgment of

the circuit court is final and valid," and that Johnson had a "full and fair opportunity to litigate

the issue." *Id.* Thus, Johnson was collaterally estopped from again litigating whether the

purported settlement letter of February 2012 discharged him from paying his student loan

---

[5] In an Opinion dated September 13, 2016, the Maryland Court of Special Appeals affirmed the Circuit Court's decision in *Johnson IX*. ECF No. 47-1. In its Opinion, the Maryland Court of Special Appeals declined to resolve Johnson's case on principles of res judicata, but reached the merits of the claims, holding that the doctrine of accord and satisfaction did not apply. Specifically, the Court of Special Appeals found that because "there was no good faith dispute for Johnson to compromise, [Defendant] ACS received no consideration for accepting less than the full amount of the debt. ACS, therefore, was entitled to keep Johnson's $12,390 and apply it as partial payment towards Johnson's debt." ECF No. 47-1 at 5–6.

obligations.[6] The Fourth Circuit affirmed Judge Grimm's decision in a *per curiam* opinion dated November 21, 2016. ECF No. 48-1.

Plaintiff disagrees that collateral estoppel bars him from further litigating the validity of the Purported Settlement because "a) Xerox raised multiple bases for its entitlement to summary judgment, and the Prince George's County Court's Order (issued without a Memorandum Opinion) does not state or imply what was the basis underlying that Court's granting of the Summary Judgment Motion; and b) the central issue in the instant case is entirely different from the central issue in the *Xerox* case." ECF No. 44-1 at 3. Despite Judge Grimm's opinion in *Johnson X*, Plaintiff argues that "collateral estoppel cannot apply to the broad and unreasoned order of judgment of the Circuit Court in the *Xerox* case." *Id.* at 13. Plaintiff further argues that the holding in *Johnson IX* or the *Xerox* case "would have absolutely no effect upon the question raised in this case whether Johnson entered into a settlement directly with the U.S. Department of Education." *Id.* at 16. Finally, Plaintiff contends that preclusion does not bar his claims of promissory estoppel, unjust enrichment, and accounting. *Id.* at 19–20. The Court disagrees.

As an initial matter, Plaintiff appears to blend concepts of claim preclusion and issue preclusion by arguing that the judgment that the Purported Settlement was invalid against Xerox would not bar litigation regarding the validity of the same Purported Settlement against a different entity, the Department of Education. As Supreme Court precedent has long made clear, the mutuality of parties is no longer a requirement for collateral estoppel. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 328–29 (1979); *see also Shader v. Hampton Imp. Ass'n, Inc.*, 443

---

[6] Judge Grimm also held that to establish a claim under the Maryland Consumer Credit Reporting Act, Md. Code Com. Law § 14-1201 *et seq.*, and the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, Plaintiff had to show that "the consumer report prepared by the credit reporting agency contains inaccurate information." *Johnson X*, 2015 WL 7769502, at *8. Because Johnson was collaterally estopped from arguing that his student loans were settled, Defendant Experian's reporting of his loans as "delinquent and in collections" was not inaccurate. Thus, the Court dismissed Johnson's credit reporting claims. *Id.*

Md. 148, 162 (2015) (noting that "[t]he traditional principle of mutuality of parties as an element of collateral estoppel has not always been required 'if one of the parties in the original case is involved in relitigating one of the issues determined against a different party in a successive suit.'"). Indeed, a primary purpose of the doctrine is that the "[d]efensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely 'switching adversaries.'" *Parklane Hosiery Co.*, 439 U.S. at 329 (1979) (citing *Bernhard v. Bank of America Nat. Trust & Savings Assn.*, 19 Cal.2d, at 813 (1942)). Hence, issue preclusion still applies, even though the Department of Education was not a party in *Johnson IX* or *Johnson X*.

As to the lack of a written opinion in *Johnson IX*, "[e]ven in the absence of *any* opinion, a judgment bars relitigation of an issue necessary to the judgment . . . so it is plain the adjudicator's silence on the issue is relevant only insofar as it may tend to obscure whether the issue was truly litigated." *Am. Iron & Steel Inst. V. U.S. E.P.A.*, 886 F.2d 390, 397 (D.C. Cir. 1989). Notwithstanding the fact that the Circuit Court issued no written opinion in *Johnson IX*, the Court in *Johnson X* did issue its own in-depth analysis, concluding:

> In order to grant Xerox's motion for summary judgment, the circuit court had to find either (1) Xerox did not have a settlement agreement with Johnson or (2) Xerox did not take actions in breach of that agreement. Because only the first element was contested, the circuit court necessarily accepted Xerox's argument that the letter was *not* a bona fide settlement of the student loan accounts that could serve as a basis for Johnson's breach of contract claim.

*Johnson v. Experian Info. Sols., Inc.*, No. PWG-15-558, 2015 WL 7769502, at *7 (D. Md. Nov. 17, 2015), *aff'd*, No. 16-1691, 2016 WL 6833354 (4th Cir. Nov. 21, 2016). Thus, considering *Johnson IX* and *Johnson X* together, the validity of the Purported Settlement has undoubtedly been "actually determined" for estoppel purposes. *Sedlack*, 134 F.3d at 224.

The question then becomes whether the finding on this issue estops all of Plaintiff's claims in the present action. In Count I, Plaintiff alleges breach of conditional settlement relating

to his "February 24, 2012 . . . conditional settlement to compromise and settle Plaintiff's

disputed debt." ECF No. 10 at 8. In Count II, Plaintiff alleges promissory estoppel based upon

Defendants' "clear and definite promises to Plaintiff to compromise, settle, and relinquish the

residue of the disputed debt . . . by knowingly accepting, cashing, and retaining Plaintiff's

$12,390.00 conditional settlement check." *Id.* at 9. In Count III, Plaintiff alleges unjust

enrichment because "Plaintiff conferred a benefit upon the Defendants by, inter alia, paying the

Defendants $12,390.00 to fully settle his disputed debt." *Id.* at 10. In Count IV, Plaintiff requests

that the Court "pass an order requiring an accounting showing the amount of all payments,

credits, and adjustments due to Plaintiff as a result of the conditional settlement." *Id.* at 11. In

Count VI, Plaintiff claims that Defendants "have continued to claim that the Plaintiff owe money

on the disputed debt which was settled by the conditional settlement; and have continued to

collect the disputed debt in amount not owed by Plaintiff" in violation of the Debt Collection

Improvement Act and the Higher Education Act of 1965. *Id.* at 13. Thus, Counts I, II, III, IV, and

VI clearly rely on the validity of the Purported Settlement, and are barred by the doctrine of

collateral estoppel. These claims are dismissed with prejudice. Accordingly, Plaintiff's Motion

for Partial Summary Judgment on Count I is also denied for these reasons.

### B. FCRA Claims

Count V, violation of the Consumer Credit Reporting Reform Act or Fair Credit

Reporting Act, presents a closer question because it does not expressly mention the Purported

Settlement. Plaintiff alleges that "Defendants have continuously reported and furnished or caused

to be reported and furnished inaccurate and false information relating to Plaintiff's disputed debt

to third parties." ECF No. 10 at 11. While Plaintiff does not specify in his Amended Complaint

the provision of the "Consumer Credit Reporting Reform Act" under which he brings his claims,

Plaintiff states in his Motion for Partial Summary Judgment that the claims in Count V are asserted under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b). To bring a cause of action under § 1681s–2(b), Plaintiff must establish: "(1) that he notified the [credit reporting agencies] CRAs of the disputed information, (2) that the CRAs notified [Defendants] of the dispute, and (3) that [Defendants] then failed to investigate and modify the inaccurate information." *Davenport v. Sallie Mae, Inc.*, No. CIV. PJM 12-1475, 2013 WL 4010983, at *3 (D. Md. Aug. 2, 2013).

Johnson declares that "I have never been delinquent or defaulted on my student loan with the Department of Education and have always paid on time. For the last four years, I have disputed this inaccurate information in writing with the Defendants and the Consumer Credit Reporting Agencies ["CRAs"]." ECF No. 27-2 ¶ 56; *see also* ECF No. 10 ¶ 50. Johnson further states that "On multiple occasions, the Credit Reporting Agencies including Experian, Trans Union, Equifax, and Innovis Credit Reporting Agencies have notified the Defendants of my dispute regarding the inaccurate information appearing in my credit reports." *Id.* ¶ 57. "The inaccurate information complained of concerns, among other things, the payment history, the amount allegedly owed on Plaintiff's disputed debt and the fact of delinquency and default." ECF No. 10 ¶ 48; ECF No. 27-2 ¶ 59. Johnson contends that "[n]otwithstanding my efforts, the Defendants have failed and/or refused to investigate and modify the inaccurate information, and have failed to note with any of the Credit Reporting Agencies that the debt was in dispute." ECF No. 27-2 ¶ 60; *see also* ECF No. 10 ¶ 52.

Taken out of context, Plaintiff could arguably be referring to a separate matter than the issues raised in prior cases. But as Defendants correctly note, in the context of the allegations of the First Amended Complaint, "the only reasonable inference that can be drawn is that the

'inaccurate information' that Johnson alleges the Department of Education is reporting or furnishing in violation of the Consumer Credit Reporting Reform Act results from not acknowledging that the Purported Settlement resolved his student loan obligations."[7] ECF No. 38-1 at 14; *see also Johnson X*, 2015 WL 7769502, at *8 (dismissing credit reporting claims on collateral estoppel grounds). Thus, the Court's holding that collateral estoppel bars further litigation of the validity of the Purported Settlement warrants dismissal of Count V as well. Plaintiff's Motion for Partial Summary Judgment on Count V is also denied for these reasons.

### IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is denied. ECF No. 27. Defendants' Motion for Judgment on the Pleadings is granted. ECF No. 38. A separate Order shall issue.

Date: February __1__ , 2017

George J. Hazel
United States District Judge

---

[7] Without such an inference, Count V would be dismissed for failure to state a claim as it would be unclear what the inaccurate information being reported could be.

13